**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

|                                         |   |                       |
|-----------------------------------------|---|-----------------------|
| HITACHI MEDICAL SYSTEMS AMERICA, INC.,  | ) | CASE NO.5:09CV847     |
|                                         | ) |                       |
| PLAINTIFF,                              | ) | JUDGE SARA LIOI       |
|                                         | ) |                       |
| vs.                                     | ) |                       |
|                                         | ) | OPINION AND ORDER     |
|                                         | ) |                       |
| LUBBOCK OPEN MRI, INC. et al.,,         | ) |                       |
|                                         | ) |                       |
| DEFENDANTS.                             | ) |                       |

Before the Court is the motion of Plaintiff Hitachi Medical Systems American, Inc. ("Plaintiff" or "Hitachi") for an entry of a sum certain final judgment against Defendant Lubbock Open MRI, Inc. ("Lubbock"). (Doc. No. 71.) By this same motion, Plaintiff also seeks a sum certain final judgment against Defendants Farmington Open MRI ("Farmington"), Open MRI of New Mexico, LLC ("New Mexico"), R&R MRI Leasing, Inc. ("R&R"), and Trans-Pecos Open MRI, Ltd. ("Trans-Pecos") (collectively "the Defaulting Defendants").

**Background**

Plaintiff brought this contract action against Lubbock, the Defaulting Defendants, and various other entities.[1] On November 5, 2010, the Court entered an order

---

[1] Defendants Open Air MRI of Lubbock, Ltd., and Open Air MRI of Texas were voluntarily dismissed from this action on April 29, 2009 (Doc. No. 11), and Defendant RKCO was terminated from the litigation on September 16, 2010. (Doc. No. 65.)

granting Plaintiff's motion for an order deeming its request for admissions, directed at Lubbock, admitted and, on the strength of the admissions, granted summary judgment against Lubbock and in favor of Plaintiff. (Doc. No. 68.) Also on November 5, 2010, the Court granted Plaintiff's motion for default judgment against the Defaulting Defendants. (Doc. No. 69.) The Court was unable to enter a sum certain final judgment against Lubbock or the Defaulting Defendants because it could not, based upon the record, ascertain the amount of damages, attorney's fees, costs, and interest under the parties' contracts. (Doc. No. 68 at 7; Doc. No. 69 at 3.) The Court, therefore, directed Plaintiff to file additional documentation that would establish the amount to which it was entitled from Lubbock and the Defaulting Defendants, and scheduled a hearing on damages to take place on December 1, 2010. (Doc. No. 68 at 8; Doc. No. 69 at 3.)

On November 11, 2010, Plaintiff filed the present motion to cancel the damages hearing and to enter a final award of damages, attorney's fees, costs, and interest. (Doc. No. 71.) Appended to Plaintiff's motion were affidavits and documents supporting Plaintiff's claim to damages. In an ordered dated November 22, 2010, the Court cancelled the December 1, 2010 damages hearing, and undertook a review of Plaintiff's submissions.

**Analysis**

   *1.      Damages against the Defaulting Defendants*

While the well-pleaded factual allegations in the complaint are taken as true when a defendant is in default, damages are not. *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 848 (E.D. Mich. 2006) (citing *Thomas v. Wooster,* 114 U.S. 104 (1885);

2

*Antonie v. Atlas Turner, Inc.*, 66 F.3d 105, 110-11 (6th Cir. 1995)). In order for the Court to enter judgment, the Court must determine the amount of damages. Under Fed. R. Civ. P. 55, the court may conduct a hearing or make a referral if it needs to determine a sum certain for damages. Rule 55 does not require an evidentiary hearing as a perquisite to the entry of default judgment if damages are contained in documentary evidence or detailed affidavits and can be ascertained by computation on the record before the Court. *See* Fed. R. Civ. P. 55.

In support of its motion for a final judgment, Plaintiff submits the affidavit of Sharon Polon, Accounts Receivable Supervisor of Hitachi (Doc. No. 71-1); the affidavit of Richard Katz, Vice President and General Counsel of Plaintiff (Doc. No. 71-2); and the affidavit of attorney Brad Sobolewski, Plaintiff's counsel (Doc. No. 71-3). Appended to attorney Sobolewski's affidavit are billing statements setting forth the attorney's fees and costs incurred by Plaintiff in this litigation. As the Court finds sufficient evidence to ascertain Plaintiff's damages, an evidentiary hearing is unwarranted to determine the necessary sum certain under Rule 55.

The June 2007 Service Maintenance Agreement (SMA) related to the service and maintenance of certain MRI units, three of which—C493, H720, H743—were operated by the Defaulting Defendants. (Polon Aff. at ¶¶ 4-5, Ex. 2.) The unpaid balances on these units, and the Defendants who incurred these balances, are identified as follows: Trans-Pecos incurred $205,675.20 on Unit No. C493; New Mexico incurred $237,746.25 on Unit No. H720; and R&R incurred $221,375.00 on Unit No. H743. (*Id.* at ¶¶ 5-8.) The total unpaid balance owed on these units is $664,796.45, and it is apparent

3

from the Complaint that Plaintiff intended to hold the Defaulting Defendants jointly and severally liable for the entire unpaid balance on the contract. (*See* Compl. at ¶¶ 39, 44, 45-47; Katz Aff. at ¶ 4.) The Court finds that Plaintiff has established this amount as against the Defaulting Defendants, jointly and severally.

In addition to this contractual amount, Plaintiff also seeks an additional $82,500.00 against the Defaulting Defendants for damages caused by Hitachi's detrimental reliance on the alleged false commitments of the Defaulting Defendants. (Compl. at ¶¶ 59-61.) Specifically, this amount represents the volume discount rates extended by Hitachi to the Defaulting Defendants. (Katz Aff. at ¶ 4.) The Court finds that this amount has also been established.

2. *Damages against Lubbock*

Lubbock was a party to the October 2007 SMA with Hitachi. (Polon Aff. at ¶ 2, Ex. 1.) On December 1, 2007, Lubbock breached the October 2007 SMA, and the damages attributable to Lubbock's breach are $170,606.90. (Polon Aff. at ¶ 3.) The Court finds that these compensatory damages have been sufficiently established against Lubbock.

3. *Attorney's Fees and Costs*

Pursuant to Section 10 of the June 2007 and October 2007 SMAs, Ohio law governs this case. (Polon Aff., Ex. 1 and 2.) Ohio follows the "American Rule" that "a prevailing party in a civil action may not recover attorney's fees as a part of costs of litigation." *Wilborn v. Bank One Corp.*, 121 Ohio St. 3d 546 (2009). However, fees may be awarded in certain circumstances, including when an enforceable contract specifically

4

provides for such an award. *Id*. at 548 (quoting *Nottingdale v. Homeowners' Assn., Inc. v. Darby*, 33 Ohio St. 32, 36 (1983), superseded by statute as stated in *New Mkt. Acquisitions, Ltd. v. Powerhouse Gym*, 154 F. Supp. 2d 1213 (S.D. Ohio 2001)),[2] ("When the right to recover attorney fees arises from a stipulation in a contract, the rationale permitting such an award is the 'fundamental right to contract feely with the expectation that the terms of the contract will be enforced.'")) Such agreements are generally "enforceable and not void as against public policy so long as the fees awarded are fair, just and reasonable as determined by the trial court upon full consideration of all of the circumstances of the case. *Nottingdale*, 33 Ohio St. 32, syllabus. Both SMAs provided for the recovery of all costs associated with the collection of overdue accounts, including "reasonable attorney's fees." (SMAs at Section 5.)

In determining a reasonable fee award, "the trial court should first calculate the number of hours reasonably expended on the case times an hourly fee." *Bittner v. Tri-County Toyota, Inc.*, 58 Ohio St. 3d 143, 145 (1991). This formula, commonly known as the "lodestar," "provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

After a court has determined the lodestar amount, it may make adjustments based on twelve factors:

---

[2] In May 2000, the Ohio General Assembly passed Ohio Rev. Code § 1301.21 to enforce commitments to pay attorney's fees if the total amount owed on the contract at the time it was entered into was over a threshold amount. It is unclear whether the SMAs would qualify for protection under § 1301.21. Application of § 1301.21 would not, however, change the Court's analysis inasmuch as the statute, like Ohio common law, requires the Court to determine a "reasonable" amount of fees. Ohio Rev. Code § 1301.21(D).

5

> the time and labor required; the novelty and difficulty of the questions; the skill requisite to perform the legal service properly; the preclusion of other employment by the attorney due to the acceptance of the case; the customary fee; whether the fee is fixed or contingent; time limitations imposed by the client or the circumstances; the amount involved and the results obtained; the experience, reputation, and ability of the attorneys; the undesirability' of the case; the nature and length of the professional relationship with the client; and awards in similar cases.

*Paschal v. Flagstar Bank, FSB*, 297 F.3d 431, 435 (6th Cir. 2002) (quoting *Blanchard v. Bergeron*, 489 U.S. 87, 91 n.5 (1989)) (numerals omitted); *Bittner*, 58 Ohio St. 3d at 145. The calculation of attorney's fees is left to the discretion of the district court and, in reaching its conclusion, the court need not set forth in detail its findings as to each factor. *Healthcall of Detroit, Inc. v. State Farm Mut. Auto. Ins. Co.*, 632 F. Supp. 2d 676, 680 (E.D. Mich. 2009); *Bittner*, 58 Ohio St. 3d at 146.

In arriving at the lodestar amount, "[t]he number of hours should be reduced to exclude hours that are excessive, redundant, or otherwise unnecessary in order to reflect the number of hours that would properly be billed to the client." *TCF Nat'l Bank v. Brooks*, 2010 Ohio App. LEXIS 1179, *13 (Ohio Ct. App. 5th Dist. Mar. 30, 2010) (quoting *Hensley*, 461 U.S. at 434). A reasonable hourly rate, in turn, is based on "the prevailing market rate in the relevant community." *TCF Nat'l Bank*, 2010 Ohio App. LEXIS 1179, at *5 (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)).

Here, attorney Brad Sobolewski attests that the hours and rates are reasonable based on the experience of the contributing attorneys, the northeast Ohio legal market, and the nature of the action. (Sobolewski Aff. at ¶ 7.) Plaintiff incurred $24,432.50 in attorney's fees through September 30, 2010, representing 29.70 hours that attorney Sobolewski spent at an hourly rate of $295.00 per hour, and 45.30 hours at a rate

6

of $310.00 per hour (after his hourly rate was increased); 1.80 hours expended by attorney Thomas Vickers at an hourly rate of $415.00 per hour; .50 hours expended by attorney Isaac Schulz at an hourly rate of $415.00; and 3.50 hours expended by paralegal Robert Kucharski at an hourly rate of $195.00. (*Id*. at ¶ 3.) The Court finds that these hourly rates are consistent with the prevailing market rates in northeast Ohio.

As for the number of hours expended, the Court notes that the billing statements, appended to the affidavit of attorney Sobolewski, include activities specifically directed toward parties, such as RKCO, that have been voluntarily dismissed. The Court also finds some redundancy and excess in the preparation of the summary judgment motion against Lubbock and the motion for default judgment against the Defaulting Defendants. To account for these excesses and disallowed charges, the Court shall adjust the lodestar amount by deducting 20%. With this adjustment, the Court finds that a reasonable award of attorney's fees is $19,546.00.[3]

The question then becomes how to apportion the amount of attorney's fees among the Defendants. The billing statements reveal that counsels' time was split equally between pursing summary judgment against Lubbock and seeking default judgment against the Defaulting Defendants. The Court, therefore, shall assign one-half, or $9,773.00, to Lubbock, and an equal amount to the Defaulting Defendants, who shall be jointly and severally responsible for their share of the fees.

---

[3] In arriving at this figure, the Court finds that it would not be appropriate to adjust this amount further based on the twelve factors identified in *Paschal* and *Bittner*.

Plaintiff also seeks costs. Attorney Sobolewski attests that Plaintiff has incurred costs of $1,095.13, representing the filing fee for Plaintiff's Complaint ($350.00), document reproduction ($439.36); postage and delivery costs ($245.52); facsimiles ($8.40); long distance telephone charges ($11.63); online research charges ($8.22); and mileage and parking expenses ($32.00). This amount is reasonable and will be assessed against defendants, with Lubbock and the Defaulting Defendants, collectively, responsible for one-half of the total costs.

*4.     Interest*

As the successful party in a breach of contract action, Plaintiff is also entitled to prejudgment and post judgment interest. *See* Ohio Rev. Code § 1343.03(A). Under both the October 2007 and June 2007 SMAs, the parties agreed that interest on past due invoices would be charged at the rate of "1.5% per month […] or the highest lawful rate, whichever is less." Accordingly, the appropriate rate is 1.5%. The date that prejudgment interest begins to run depends on the date of the breach, which, in turn, depends on the MRI Unit in question. Specifically, the Court finds that prejudgment interest on the amount owed by Lubbock for Unit A133 ($170,606.90) runs from December 1, 2007; interest owed on Unit C493 ($205,675.20) runs from December 18, 2007; interest owed on Unit H720 ($237,746.25) runs from January 1, 2008; and interest owed on Unit H743 ($221,375.00) runs from May 1, 2008. (Polon Aff. at ¶¶ 3, 6-8.)  Post judgment interest is appropriately assessed at 1.5% per month from the date of the judgment, November 5, 2010.

Based on the foregoing, it is ORDERED, ADJUDGED and DECREED that judgment shall be entered in favor of Plaintiff Hitachi and against Lubbock and the Defaulting Defendants as follows:

- Compensatory damages in the amount of $170,606.90 against Lubbock, attorney's fees in the amount of $9,773.00 against Lubbock, costs in the amount of $547.57 against Lubbock, plus prejudgment interest at the rate of 1.5% per month, accruing from December 1, 2007, and post judgment interest at the rate of 1.5% per month, accruing from November 5, 2010; and

- Compensatory damages in the amount of $747,296.45 ($664,796.45 in contract damages and $82,500 for detrimental reliance) against the Defaulting Defendants, jointly and severally, attorney's fees in the amount of $9,773.00 against the Defaulting Defendants, also jointly and severally, prejudgment interest at the rate of 1.5% per month, accruing from (a) December 18, 2007 with respect to the $205,675.20 unpaid balance on Unit C493, (b) January 1, 2008 with respect to the $237,746.25 unpaid balance for Unit H720, and (c) May 1, 2008 with respect to the $221,375.00 unpaid balance for Unit H743, and post judgment interest at the rate of 1.5% per month, accruing from November 5, 2010.

This case is closed.

**IT IS SO ORDERED**.

Dated: December 10, 2010

                                            **HONORABLE SARA LIOI**
                                            **UNITED STATES DISTRICT JUDGE**